IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PROSYS, INC.,

    Plaintiff,

       v.

JOHNS HOPKINS BAYVIEW MEDICAL
CENTER, INC., ET AL.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

CIVIL NO.: WDQ-07-2104

MEMORANDUM OPINION

ProSys, Inc. ("ProSys") sued Johns Hopkins Bayview Medical

Center, Inc. ("Johns Hopkins Bayview"), Johns Hopkins Health

System Corporation, Computerized Facility Integration, LLC

("CFI"), MRO Software, Inc. ("MRO"), International Business

Machines Corporation ("IBM"), and SpeXsys, LLC ("SpeXsys")

(collectively referred to as "Defendants") for violating the

Maryland Uniform Trade Secrets Act[1] and sued Johns Hopkins

Bayview for "breach of [its] contractual duty of confidentiality

and non-disclosure."

Pending is ProSys's Motion to Remand to the Circuit Court

for Baltimore City, and Defendants' request for a oral hearing.

For the following reasons, ProSys's motion will be granted, and

Defendants' request for a hearing will be denied.

---

[1] Md. Code Ann., Com. Law, § 11-201 *et seq*. (West 2006).

1

I.   Background

ProSys, a Maryland corporation, develops and licenses software systems for use in computer software development, facilities management, construction project management, environment management, and patient transport management.   Compl. ¶¶ 1, 16.   On June 6, 1996, ProSys entered a Software Development and License Agreement (the "License Agreement") with Johns Hopkins Bayview.   *Id.* ¶ 28.   The License Agreement granted Johns Hopkins Bayview a non-exclusive license to use Central Station Management Solution[2] ("Central Station") and other documentation for facilities management and construction project management. *Id.*   Under the License Agreement, Johns Hopkins Bayview acknowledged that "[it] [would be] receiving information which is proprietary and confidential."   License Agreement § 8.1.   Johns Hopkins Bayview agreed to hold such proprietary information in trust and confidence and protect it from disclosure to third parties.   *Id.* § 8.2.

In 2002, Johns Hopkins University and Johns Hopkins Health System (collectively referred to as "Johns Hopkins Institutions") began a feasibility study to evaluate the replacement of computer

---

[2] Central Station is a management solution software consisting of "formulations, patterns, compilations, programs, devices, methods, techniques, and processes that are embodied in a total management solution."   Compl. ¶ 22.   The system includes computer software programs, software products, user guides, manuals, diagrams, drawings, test programs, inventor and programmer notes, and printouts.   *Id.* ¶ 26.

systems used at facilities at the Johns Hopkins Institutions with a fully integrated system. Compl. ¶ 36. In 2003, Johns Hopkins Institutions selected SAP, a provider of computer software platforms for businesses, to supply the software packages and replace the existing specific computer systems at Johns Hopkins Institutions. *Id.* ¶ 37. In 2004, this initiative to convert computer systems to the SAP software packages became known as "HopkinsOne." *Id.* ¶ 38.

In 2005, Johns Hopkins Bayview, a facility being converted to the SAP software package, informed Gene (Vince) Jordon, President and sole shareholder of ProSys, that as part of the HopkinsOne initiative it intended to issue a Request for Proposals ("RFP") concerning the facilities management software and interface of such software with the SAP system. *Id.* ¶ 41. Johns Hopkins Bayview never issued the RFP, and in September 2005 Johns Hopkins Institutions announced that Central Station would be phased out in favor of "Maximo," a software developed by MRO. *Id.*

In late 2005, Johns Hopkins Institutions contracted with CFI to assist in the transition, installation, and implementation of Maximo by July 1, 2006. *Id.* ¶ 43. On several occasions in the summer of 2006, MRO, CFI and SpeXsys personnel met with Johns Hopkins Bayview personnel to learn about the features, functions and utilization of Central Station. *Id.* ¶ 48. This included

3

analyzing features and performing tests, which ProSys alleges led to acquisition of certain confidential information. *Id.* In June 2006, Johns Hopkins Bayview personnel also held a series of meetings with CFI representatives, during which time it provided copies of Central Station's print outs and training manuals for the facilities and project management applications. *Id.* ¶ 49. In August 2006, ProSys received various e-mails from CFI representatives and employees of Johns Hopkins Bayview's Information Systems Department, requesting access to proprietary information and inquiring about Central Station applications. *Id.* ¶¶ 53-54.

As a result, Jordon asked for confirmation from Johns Hopkins Bayview that it was respecting "the confidentiality of ProSys's proprietary, confidential, and trade secret information" under the License Agreement. *Id.* ¶ 56. Johns Hopkins Bayview gave its assurances that no proprietary information had been disclosed. *Id.* ¶ 57. Thereafter, in November 2006, Johns Hopkins Bayview and SpeXsys provided CFI and MRO with ProSys's two-way text pagers, which contained live versions of Central Station Management Solution. *Id.* ¶ 59.

On July 3, 2007, ProSys filed suit in the Circuit Court for Baltimore City, claiming that Defendants violated MUTSA and Johns Hopkins Bayview breached its duty of confidentiality and non-disclosure. Paper No. 2. The case was removed by Defendants to

4

federal court on August 8, 2007 alleging ProSys's breach of contract claim was preempted by federal law.  Paper No. 1.

II.  Analysis

A.  Preemption of State Law Claims

ProSys asserts that its case should be remanded to state court because it seeks to protect rights different from those provided by § 17 U.S.C. § 301 (2000) (the "Copyright Act"). Defendants counters that ProSys's breach of confidentiality claim is preempted because ProSys seeks to protect the same rights as those under the Copyright Act; thus, removal was proper.

To determine if an action arises under federal law, the federal element must be part of a well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, "[a] federal question exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*  A plaintiff "may avoid federal jurisdiction by exclusive reliance on state law" in pleading its case. *Id.*

In certain circumstances, however, "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 393.  This is called the "complete preemption" doctrine and occurs when "an area of state law has been completely pre-empted,

[so that] any claim purportedly based on that pre-empted state law is considered . . . a federal claim." *Id.*

The complete preemption doctrine applies to § 301 of the Copyright Act. *See* Notes on Committee on the Judiciary, H.R. No. 94-1476 (1976). Section 301(a) states that:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title . . . no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

Thus, ProSys's state law claims are preempted if two requirements are met: (1) the work is within the scope of the subject matter of copyrights; and (2) the rights granted under state law are equivalent to any exclusive rights set forth in § 106 of the Copyright Act. *Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993).

1.   Subject Matter Requirement

The "subject matter of copyright" encompasses original works of authorship fixed in any tangible medium of expression, including "literary works." 17 U.S.C. § 102(a)(1). "Literary works" are broadly defined as "works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material

6

objects, such as books, periodicals . . . in which they are embodied." *Id.* § 101.

ProSys's complaint alleges that Johns Hopkins Bayview improperly disclosed proprietary information related to its licensed software, Central Station. Compl. ¶ 64. Central Station includes computer software programs, software products, user guides, manuals, diagrams, drawings, test programs and printouts. *Id.* ¶ 26. These materials are considered protected "literary works" under § 102 of the Copyright Act. *See M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 435 (4th Cir. 1986) (computer programs are entitled to copyright protection); *Dun & Bradstreet Software Serv., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206-207 (3d Cir. 2002) (computer software is within the scope of the Copyright Act). Moreover, ProSys does not dispute that its software and materials fall within the subject matter of copyright. Pl.'s Reply Mem. at 8.

2.  General Scope Requirement

The Court must also determine whether ProSys's state law claims involve a right equivalent to one of those identified in § 106 of the Copyright Act. Under § 106, a copyright owner has the exclusive right to: (1) reproduce the work; (2) prepare derivative works based on the work; (3) distribute copies of the work; (4) perform th work publicly; and (5) display the work publicly. 17 U.S.C. § 106. If the rights ProSys seeks to

protect are "equivalent" to the exclusive rights reserved to it under § 106, its claims will be preempted by § 301(a).  *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993).  However, if an "extra element" beyond those necessary to prove copyright infringement is required to constitute a state law claim, there is no preemption.  *Trandes*, 996 F.2d at 659 (*citing Harper & Row, Publishers, Inc. v. Nation Enter.*, 723 F.2d 195, 200-01 (2d Cir. 1983)).[3]  Thus, the state law claims must "regulate conduct qualitatively different [than] the conduct governed by federal copyright law" to avoid preemption.  *Trandes*, 996 F.2d at 659.

a.   Breach of Confidentiality Claim

ProSys contends that its breach of confidentiality claim is not preempted by the Copyright Act because it meets the "extra element" test.  Pl.'s Supp. Mem. at 26.  ProSys's central allegation is that Johns Hopkins Bayview breached its duty of trust and confidentiality when it provided third parties, including its competitors, with certain proprietary information.  *Id.*  ProSys asserts that this breach arises from "express confidentiality provisions in a two-party contract between [it] and Johns Hopkins Bayview."  *Id.*  For these reasons, ProSys contends that its contract rights are qualitatively different

---

[3] This test has become known as the "extra element" test.  *See Trandes*, 996 F.2d at 659 (*citing Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 505 (D. Mass. 1992)).

from rights under general copyright laws.  *Id.*

ProSys also cites several cases from this district to support its contention that contract actions for breach of confidentiality are not preempted.  *Lowry's Reports, Inc. v. Legg Mason, Inc.* (*Lowry I*), 186 F. Supp. 2d 592 (D. Md. 2002); *Lowry's Reports, Inc. v. Legg Mason, Inc.* (*Lowry II*), 271 F. Supp. 2d 737 (D. Md. 2003); *Fischer v. Viacom Int'l, Inc.*, 115 F. Supp. 2d 535 (D. Md. 2002).  In *Lowry I* and *II*, the district court analyzed the publisher's breach of contract claim for breach of a subscription agreement and determined that its claim was not preempted because the contractual rights asserted were qualitatively different from the restrictions imposed by the Copyright Act.  *See Lowry I*, 186 F. Supp. 2d at 594; *Lowry II*, 271 F. Supp. 2d at 756-57.  In *Fischer*, the court concluded that plaintiff's breach of confidential arrangement was preempted, but dismissed the claim because plaintiff failed to plead the existence of an express confidential agreement.  115 F. Supp. 2d at 542-44.

Defendants counter that ProSys's breach of confidentiality claim is preempted because the rights ProSys seeks to protect are equivalent to those provided by copyright laws.  Def.'s Resp. Mem. at 19-20.  It references § 8.2 of the License Agreement which prohibits "disclosure," "publication," "dissemination," and "circulation" of ProSys's materials, and argues that these

9

contractual restrictions are identical to the terms of the Copyright Act, which prohibits the "display," "reproduction," "performance," and "distribution" of copyrighted work. *Id.* at 20.; *see also* 17 U.S.C. § 106(3)-(5).  Defendants also highlight many of the words used in ProSys's complaint and argues that they are equivalent to § 106 rights. *See* Def.'s Resp. Mem. at 20-22. Defendants further assert that the cases ProSys relies on are inapplicable because the contractual rights at issue are distinguishable.  Def.'s Resp. Mem. at 27-28.

While the cases cited by ProSys are instructive on preemption of breach of contract claims, a review of the specific contractual agreement is most helpful in this case.  The basis for ProSys's breach of contract claim is that Johns Hopkins Bayview disclosed proprietary information to third parties and failed to prevent its employees from disclosing confidential information to ProSys's competitors, in violation of §§ 8.1[4] and

---

[4] Section 8.1 provides:

> Both parties acknowledge that, in the course of performing their respective obligations hereunder, they shall be receiving information which is proprietary and confidential . . . which the disclosing party wishes to protect from public disclosure ("Proprietary Information").  Proprietary information as used herein includes . . . all information disclosed at any time before, after, or at the time of execution of this Agreement between the parties relating to the Licensed Software . . . and any other confidential information or trade secrets . . .

*See also* Compl. ¶ 31.

10

8.2[5] of the License Agreement.  Compl. ¶¶ 64-71.  Specifically,
ProSys alleges that Johns Hopkins Bayview gave ProSys's
competitors confidential materials and allowed them to access and
review certain protected information.  *Id.* ¶¶ 48-61.

To prove copyright infringement, a plaintiff must show that
it owned a valid copyright and that the defendant copied original
elements of its copyrighted work.  *Feist Publ'n, Inc. v. Rural
Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) (*citing Harper &
Row,* 471 U.S. at 548 (1985)).  While ProSys alleges that Johns
Hopkins Bayview engaged in the unauthorized copying of
proprietary information, the dispute stems primarily from the
alleged breach of its contractual duties.  Thus, ProSys must
establish that Johns Hopkins Bayview had a relationship that
imposed a duty of trust and confidentiality and that it promised

---

[5] Section 8.2 provides:

> Each party (a) shall hold such Proprietary Information
> in confidence and not disclose it, except to its
> employees or representatives to whom disclosure is
> necessary to effect the purposes of this Agreement and
> who are similarly bound to hold the Proprietary
> Information in confidence; (b) shall use its best
> efforts to prevent . . . disclosure, publication or
> dissemination of any Proprietary Information; (c) shall
> not make any use of Proprietary Information nor
> circulate Proprietary Information in its organization,
> except to the extent necessary to carry out the intent
> of this Agreement.

*See also* Compl. ¶ 32.

11

to keep ProSys's materials confidential.  *See Fischer*, 115 F.
Supp. 2d at 542.  Recovery for breach of confidence requires
ProSys to meet additional elements of proof beyond those
necessary to prove copyright infringement.  The parties
contractual relationship comprises the core of Count I and
denotes a qualitatively distinguishable cause of action.  *See*
H.R. Rep. No. 1476, 94th Cong., 2d Sess. 132 ("nothing in the
bill derogates from the rights of parties to contract with each
other and to sue for breaches of contract").  Accordingly,
ProSys's contract claim is not preempted by the Copyright Act.

b.   Maryland Uniform Trade Secrets Act

ProSys's MUTSA claim is not preempted by the Copyright Act.
In *Trandes*, the Fourth Circuit considered whether the Copyright
Act preempted an action brought under the Maryland trade secrets
statute.  996 F.2d at 659.  The *Trandes* Court rejected the
defendants' preemption defense and concluded that recovery for
trade secret misappropriation requires proof of breach of
confidence--an element of proof additional to those necessary for
recovery in an action for copyright infringement.  *Id.* at 659-60.
Similar to the complaint in *Trandes*, Count II of ProSys's
complaint is for violation of the Maryland trade secrets statute.
Moreover, Defendants' notice of removal was based on ProSys's
breach of confidentiality claim (Count I), not its
misappropriation of trade secrets claim (Count II).  See Paper

12

No. 1.  Accordingly, the Court obtained supplemental jurisdiction over Count II under 28 U.S.C. §§ 1367(a) and 1441(c), and Count II is not subject to the preemption doctrine.

B.   Consideration of Other Pleadings

Defendants request the Court to consider ProSys's conduct and prior complaints in determining proper jurisdiction.  It points out that ProSys has filed three different complaints in two separate lawsuits over a ten-week span.  Def.'s Resp. Mem. at 31.  Defendants argue that "each complaint successively alter[s] the text and the allegations" to make it appear that the conduct in dispute is not subject to the Copyright Act.  *Id.* Accordingly, it urges the Court to review these amendments and revisions because it will "lay bare the true nature of ProSys's contract claim."  *Id.*  Defendants also cite several cases which it claims gives the federal courts discretion to consider other materials in resolving jurisdictional issues.  *Gentek Bldg. Prod., Inc. v. Steel Peel Litig. Trust*, 491 F.3d 320, 330 (6th Cir. 2007); *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 616-17 (4th Cir. 2004), *rev'd on other grounds*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005); *Community Ins. Co. v. Rowe*, 85 F. Supp. 2d 800, 804 (S.D. Ohio 1999).  The cases Defendants rely on are not instructive because the procedural posture is substantially different in this case.

On July 3, 2007, ProSys voluntarily dismissed its action in

13

state court, and immediately filed a new complaint in the Circuit Court for Baltimore City.[6]  A voluntary dismissal without prejudice under Rule 41(a)(1) "operates to leave the parties as if no action had been brought at all." *Dove v. CODESCO*, 569 F.2d 807, 809 n.3 (4th Cir. 1978).  Thus, a voluntary dismissal "carries down with it previous proceedings and orders . . . and all issues, with respect to plaintiff's claim." *In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005) (*citing Van-S-Aviation Corp. v. Piper Aircraft Corp.*, 551 F.2d 213, 219 (8th Cir. 1977) (internal quotation marks omitted)).  ProSys has acted in accordance with the procedural rules, and the Court views ProSys's conduct merely as legal strategy.  Accordingly, the Court did not rely on ProSys's previous pleadings in rendering its decision.

III.  Conclusion

For the above stated reasons, ProSys's motion will be granted.


<u>November 20, 2007</u>                      <u>          /s/          </u>
Date                                  William D. Quarles, Jr.
                                      United States District Judge

─────────────────

[6] *ProSys, Inc. v. John Hopkins Bayview Medical Center, Inc.*, No. 24-C07-004909 (Cir. Ct. Balt. City July 3, 2007).